UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MEDICAL RESPONSE OF MASSACHUSETTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL ASSOCIATION OF EMT's & PARAMEDICS, LOCAL 1,<br><br>Defendant. | CIVIL ACTION NO. 04-11736-PBS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff American Medical Response of Massachusetts, Inc. ("AMR") hereby submits this memorandum in support of Plaintiff's Motion for Summary Judgment. For the reasons set forth below, there is no genuine issue as to any material fact, and AMR is entitled to judgment as a matter of law on its Complaint, dated August 6, 2004 (the "Complaint").

I.  **INTRODUCTION**

On May 30, 2003, AMR terminated the employment of Matthew Levy ("Levy"), a paramedic, for publicly sexually harassing a female co-worker at a company-sponsored event in front of numerous witnesses. Levy both physically and verbally sexually abused his co-worker after previously having been suspended for an earlier violation of AMR's "Policy of Non-Discrimination and Non-Harassment," at which time he had been warned in writing that any further violation of that policy would result in his immediate termination.

Defendant International Association of EMT's & Paramedics, Local 1 (the "Union") grieved the termination of Levy's employment. The arbitrator, Michael W. Stutz (the "Arbitrator") found that Levy engaged in the "public spanking of a woman" and that his conduct "might even rise to the level of a criminal assault and battery." See Plaintiff's List of Evidence in Support of Plaintiff's Motion for Summary Judgment at Tab 3: Award of the Arbitrator (the "Award") at 12.[1] In addition, Levy verbally harassed his co-worker by uttering profanities at her, calling her, among other things, a "douche," accusing her of "fucking management" and reducing her to tears at a company-sponsored event. See Tab 3: Award at 4-5.

Nonetheless, the Arbitrator ordered that Levy be reinstated to his employment with AMR and be made whole for all lost benefits. Despite conduct that the Arbitrator recognized could constitute criminal assault and battery on a woman in a public place, and notwithstanding the earlier written agreement that Levy would be terminated for any further violation of AMR's "Policy of Non-Discrimination and Non-Harassment," the Arbitrator converted AMR's termination of Levy's employment into a mere "written warning." See Tab 3: Award at 1 and 13. The Award effectively imposed *no* discipline whatsoever on Levy for his outrageous and potentially criminal conduct. As a result, the Award was entered in manifest disregard of federal law, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, which forbids sexual harassment in the workplace, and is in violation of the federal public policy embodied in Title VII. Thus, the Award must be vacated.

---

[1] All citations are to the documents attached to Plaintiff's List of Evidence in Support of Plaintiff's Motion for Summary Judgment and, for the Court's convenience, are prefaced with the letter of the tab denoting the location of each document in that list.

## II. UNDISPUTED FACTS

The undisputed facts are set forth in Plaintiff's Statement of Undisputed Facts Pursuant to LR, D. Mass. 56.1 filed herewith. For brevity, they are not repeated here.[2]

## III. ARGUMENT

### A. The standard of review of an arbitration award permits a district court to vacate an award that is in manifest disregard of the law or that violates public policy.

AMR, of course, recognizes that a "district court's review of arbitral awards must be 'extremely narrow and exceedingly deferential.'" Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000), quoting Wheelabrator Envirotech Operating Serv., Inc. v. Massachusetts Labors Dist. Council Local 1114, 88 F.3d 40, 43 (1st Cir. 1996). Nonetheless, "[t]he considerable deference due an arbitrator's decision 'does not grant carte blanche approval to any decision that the arbitrator might make. . . .'" Challenger Caribbean Corp. v. Union General de Trabajadores, 903 F.2d 857, 861 (1st Cir. 1990), quoting International Bhd. of Firemen Local 261 v. Great N. Paper Co., 765 F.2d 295, 296 (1st Cir. 1985).

While it is the rare arbitral award that warrants judicial vacatur, this is such a case. A district court can vacate an arbitration award made, as here, in manifest disregard of the law. Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc., 274 F.3d 34, 35 (1st Cir. 2001). See also Prudential-Bache Sec., Inc. v. Tanner, 72 F.3d 234, 239 (1st Cir. 1995) ("judicial review of arbitration awards is available where arbitrators have acted in manifest disregard of the law").

Similarly, it is well established that courts may not enforce labor arbitration awards that are contrary to public policy. A district court "may vacate an arbitration award where the arbitration agreement as interpreted would violate public policy." Prudential-Bache, 72 F.3d at

---

[2] Also for brevity and consistency, AMR will use here the same defined terms as in Plaintiff's Statement of Undisputed Facts Pursuant to LR, D. Mass. 56.1.

241. See also Eastern Assoc. Coal Corp. v. United Mine Workers of America, Dist. 17, 531 U.S. 57, 62 (2000) (Supreme Court recognizing a "legal exception that makes unenforceable 'a collective-bargaining agreement that is contrary to public policy'") (quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)). A determination of whether an arbitral award conflicts with public policy is uniquely within the province of the courts, not arbitrators, to decide. W.R. Grace, 461 U.S. at 766 ("the question of public policy is ultimately one for resolution by the courts"). The public policy doctrine allows this Court to decide *de novo* whether the Award violates public policy. Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of America, AFL-CIO, 959 F.2d 685, 687 (7th Cir.), cert. denied, 506 U.S. 908 (1992).[3]

The Award reinstating Levy without condition and with full benefits cannot survive even limited judicial review. The Arbitrator found that Levy, who previously had violated AMR's Policy of Non-Discrimination and Non-Harassment, sexually harassed a co-worker by publicly spanking her twice and threatening to do so a third time. In bizarre fashion, however, the Arbitrator reasoned that *if* the spanking had taken place in a "less public" setting, it would not have been unacceptable. See Tab 3: Award at 13. The Award, by comparing the public sexual harassment that actually occurred here with similar conduct in private (which did *not* occur at the event at issue), is unfounded in reason or fact, and any such "reasoning" is palpably faulty and ignorant of the controlling law. Similarly, the Arbitrator's attempt to defend Levy's sexually harassing conduct on the basis that Levy somehow was provoked into such outrageous behavior by "perceived" threats made against him by other AMR employees wholly ignores the law under Title VII, which recognizes no such defense to acts of sexual harassment. Moreover, where

---

[3] This Court, however, must accept the facts as the Arbitrator found them. Wonderland, 274 F.3d at 37; Boston Med. Ctr. v. Serv. Employees Int'l Union, Local 285, 260 F.3d 16, 18 (1st Cir. 2001), cert. denied, 534 U.S. 1083 (2002).

Levy already had been disciplined once for harassment, his reinstatement without penalty clearly violates the public policy against workplace harassment.

**B.     The Award was entered in manifest disregard of Title VII.**

The Award was in manifest disregard of Title VII because it is wholly lacking in any coherent reasoning and ignores the controlling law. As the First Circuit stated in Prudential-Bache, 72 F.3d at 238, quoting Advest, Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990):

> The test for a challenge to an arbitration award for manifest disregard of the law is set out in Advest, Inc. v. McCarthy: a successful challenge . . . depends upon the challenger's ability to show that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact."

See also Wonderland, 274 F.3d at 36, quoting Gupta v. Cisco Sys., Inc., 274 F.3d 1, 3 (1st Cir. 2001) ("[a]n award is in manifest disregard of the law if either 'the award is contrary to the plain language of the contract' or 'it is clear from the record that the arbitrator recognized the applicable law, but ignored it'").

The Award, on the facts found, is unfounded in both reason and fact, and its reasoning is palpably faulty. The Arbitrator found that Levy's conduct consisted of "the public spanking of a woman" on two occasions. See Tab 3: Award at 10 and 12. He recognized that this offense "might even rise to the level of a *criminal assault and battery.*" See Tab 3: Award at 12 (emphasis added). The Arbitrator also concluded that Levy's conduct met the definition of sexual harassment as it was both unwelcome and offensive, and Levy himself admitted that his conduct was unwelcome. See Tab 3: Award at 6 and 10. In addition, the Arbitrator specifically determined that Levy's conduct, which reduced Estremera to tears and "mortified" her, violated AMR's policy prohibiting harassment. See Tab 3: Award at 11 and 12.

Such physical and verbal abuse plainly violates Title VII, and the Arbitrator so ruled. See Tab 3: Award at 10 and 11. An employer such as AMR has a legal duty to take action reasonably calculated to prevent sexual harassment in the workplace, particularly by employees who have committed acts of harassment in the past. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998) ("[t]he employer is, of course, obliged to respond to any repeat conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective"). The law is clear that liability for sexual harassment can be imposed under Title VII on an employer who fails to take reasonable action to prevent harassment. See, e.g., 29 C.F.R. §1604.11(d) (employer is liable for sexual harassment between fellow employees of which employer knew or should have known unless employer can show it took immediate and appropriate corrective action). See also Newsday, Inc. v. Long Island Typographical Union, No. 915, 915 F.2d 840, 844 (2d Cir. 1990), cert. denied, 499 U.S. 922 (1991) ("Title VII places upon an employer the responsibility to maintain a workplace environment free of sexual harassment").

Despite the clear law on this issue, the Arbitrator determined that a lesser (in reality no) penalty was warranted only by ignoring the law and manufacturing two so-called "mitigating circumstances" (see Tab 3: Award at 13) that the law simply does not recognize. First, despite finding that Estremera was sexually harassed by being subjected to two "*public* spankings," reduced to tears and "mortified" that Levy saw fit to take liberties with her person in public (see Tab 3: Award at 10 and 12) (emphasis added), the Arbitrator somehow concluded that "in *less public* circumstances, [Levy's] conduct was neither unwelcome nor offensive to Ms. Estremera." See Tab 3: Award at 12 (emphasis added). Thus, the Award is unfounded in reason or fact, and

its "reasoning" is utterly irrational because the abuse at issue *did* occur in a public setting, and the Arbitrator specifically found that it was "unwelcome." See Tab 3: Award at 6 and 10.[4] Reasoning which determines an award by supposing a construction of events that never occurred can only be "faulty" and "palpably" so. As the Award itself demonstrates, the Arbitrator plainly ignored the law on sexual harassment by manufacturing a defense based on some form of non-public, playful patting on the buttocks between co-workers that the Arbitrator evidently considers acceptable but which did not even happen here. Simply put, no judge or group of judges conceivably could have made such a ruling.

The Arbitrator's reasoning with regard to a second supposed mitigating factor, that being "the fact that the incident occurred in the context of [Levy's] Union [sic] organizing of Company premises in Bridgeport, Connecticut and Florida" (see Tab 3: Award at 12) also plainly ignores the law under Title VII. After finding that sexual harassment occurred, the Arbitrator ignored the clear law under Title VII by creating what is in effect an affirmative defense to sexual harassment, one of provocation, that the law not only does not acknowledge but that is contrary to Title VII. The Arbitrator's focus on *Levy's* rationale for his abusive behavior evidenced a manifest disregard for the law because Title VII does not recognize as a defense to sexual harassment a harasser's contention that he was provoked to harass by some third party.

The Arbitrator's "reasoning" is all the more bizarre and palpably faulty where he "agree[d]" with [AMR's] interpretation of the incident as an effort by [Levy] to upset management by flagrantly slapping his female friend on the buttocks right in front of them. . . ." See Tab 3: Award at 12. The Arbitrator thus concluded that Levy used a female co-worker as a prop when Levy intentionally sexually harassed her because of "what he perceived to be" threats

---

[4] Levy himself admitted that the conduct that actually occurred was in fact unwelcome. See Tab 3: Award at 6.

from AMR officials. See Tab 3: Award at 12-13. The Arbitrator somehow considered Levy's sexual harassment acceptable under those "perceived" circumstances only by ignoring Title VII and creating a wholly new defense to sexual harassment, that being perceived provocation by a third party. That, quite simply, is again a wholly manufactured defense that Title VII not only does not recognize but that is contrary to established law. As the First Circuit has concluded, "[w]hen dealing with discriminatory harassment (e.g., harassment based on gender, race, or the like), there is seldom, *if ever*, a defensible purpose behind the injurious actions. The *only question* is whether the bad acts, taken in the aggregate, are sufficiently severe or pervasive to constitute actionable harassment." Noviello v. City of Boston, 398 F.3d 76, 93 (1st Cir. 2005) (emphases added). See also Williams v. General Motors Corp., 187 F.3d 553, 566 (6th Cir. 1999) (in a sexual harassment case, "the intent of the alleged harasser is irrelevant in the court's subjective prong analysis"). Thus, Levy's reason for sexually abusing Estremera in public is utterly irrelevant and cannot form a defense to his actions. The Arbitrator plainly ignored the law under Title VII and instead constructed absurd, strained rationales for Levy's malfeasance that the law does not permit.[5]

### C.   The Award reinstating Levy with full benefits violates the public policy against sexual harassment in the workplace set forth in Title VII.

The public policy ground for refusing to enforce an arbitration award constitutes another exception to the otherwise narrow review of arbitral awards. See Eastern Assoc. Coal, 531 U.S. at 62; Boston Med. Ctr., 260 F.3d at 23. The public policy exception allows a court to vacate an

---

[5] The Award's thirteen pages of facts and opinion starkly reveal that the Arbitrator ignored well-defined law. For this reason, decisions such as Prudential-Bache and Advest are inapposite because the arbitrators there did not explain the reasons behind their awards. See Prudential-Bache, 72 F.3d at 240 (First Circuit commenting that the requirement of a showing in the record that the arbitrator knew the law and expressly disregarded it created a high hurdle "where, as here, arbitrators do not explain the reasons justifying their award . . ."); Advest, 914 F.2d at 10 (arbitrators did not explain their award, thereby leaving appellant "hard pressed" to satisfy exacting criteria). AMR faces no such difficulty here.

arbitral award "where the contract as interpreted [by the arbitrator] would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987).

In analyzing whether an award of reinstatement violates public policy, a court "must assume the collective-bargaining agreement itself calls for [the employee's] reinstatement." Eastern Assoc. Coal, 531 U.S. at 61. The reviewing court "must treat the arbitrator's award as if it represented an agreement between [the employer] and the Union as to the proper meaning of the contract's words 'just cause.'" Eastern Assoc. Coal, 531 U.S. at 62. In assessing whether a contractual reinstatement requirements falls within the legal exception making a collective-bargaining agreement unenforceable as contrary to public policy, the question is whether the award of reinstatement itself violates public policy. Eastern Assoc. Coal, 531 U.S. at 62-63. As the First Circuit stated, "the question is not whether [the employee's] *conduct* violated a public policy in favor of competent nursing care, but whether the *order to reinstate* [the employee] violated that policy." Boston Med. Ctr., 260 F.3d at 23 (emphases in original).

In Eastern Assoc. Coal, 531 U.S. at 63, the Supreme Court recognized, however, that "courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates positive law. Nevertheless, the public policy exception is narrow and must satisfy the principles set forth in W.R. Grace and Misco."[6] Likewise, in Mercy Hosp., Inc. v. Massachusetts Nurses Assoc., 429 F.3d 338, 345 (1st Cir. 2005), the First Circuit stated that, "[t]o be sure, there is reason to believe that an employer is not invariably required to

---

[6]  The principles in W.R. Grace and Misco to which the Supreme Court referred require that the public policy be an explicit, well-defined and dominant one ascertained by reference to positive law and not from general considerations of supposed public interest.

point to a specific provision of positive law in order to bring the case within the ambit of the public policy exception." As support for that position, the First Circuit referred to its prior decision in Boston Med. Ctr. where "we required the employer to show that the reinstatement order subsumed employee conduct so egregious that resumed employment would offend some deep-rooted public policy." Mercy Hosp., 429 F.3d at 345.[7] Thus, AMR, under these authorities, need not point to a specific law prohibiting reinstatement with respect to the precise conduct at issue.

> 1. **The Award violates public policy where Levy previously had been warned that any further harassment would result in his termination.**

The Award reinstating Levy without condition violates the public policy against sexual harassment in the workplace embodied in Title VII and should be vacated. In the seminal Newsday decision, the Second Circuit Court of Appeals held that an arbitration award reinstating an employee found to have committed sexual harassment violated public policy where the employee previously had engaged in acts of sexual harassment. In 1983, the employee had been discharged for "disorderly conduct" in violation of certain office rules prohibiting offensive conduct. An arbitrator at that time ordered his reinstatement, conditioned on the warning that "any action on the employee's part consistent with his past citable behavior shall be grounds for immediate discharge." Newsday, 915 F.2d at 812. In 1988, the employee then committed acts of physical sexual harassment against a co-worker. In investigating that conduct, Newsday learned of additional incidents of alleged sexual harassment in 1984 and 1986. In light of those incidents and the earlier arbitral award providing for immediate discharge for further acts,

---

[7] In Boston Med. Ctr., 260 F.3d at 25, the First Circuit recognized that, "[e]ven in the absence of a specific law or regulation barring reinstatement in the circumstances of this case, we acknowledge that there might be conduct so egregious that reinstatement might threaten the general public policy promoting the competence of nurses and patient safety." The First Circuit concluded, however, that the facts before it there did not present such a case. Boston Med. Ctr., 260 F.3d at 25.

Newsday discharged the employee. Newsday, 915 F.2d at 842-843. Nonetheless, as here, an arbitrator concluded that the offenses of sexual harassment were not of the type that called for immediate discharge and applied progressive discipline. The arbitrator reinstated the employee without back pay and ordered that any similar offensive behavior would be grounds for immediate discharge. Newsday, 915 F.2d at 843.

The Second Circuit, in vacating the award, ruled that, "[t]he public policy against sexual harassment in the workplace is well recognized." Newsday, 915 F2d at 844.[8] The Second Circuit concluded that Title VII places upon an employer the responsibility to maintain a workplace environment free of sexual harassment. Newsday, 915 F.2d at 844.[9] The award of reinstatement there completely disregarded the public policy against sexual harassment in the workplace as well as the prior arbitrator's ruling that any further acts of harassment would be grounds for discharge. Newsday, 915 F.2d at 845. The Second Circuit viewed the arbitrator's award as condoning the misconduct as "it tends to perpetuate a hostile, intimidating and offensive work environment. [The employee] has ignored repeated warnings. Above all, the award prevents Newsday from carrying out its legal duty to eliminate sexual harassment in the

---

[8] The district court previously had concluded that "[a] clearer expression of a well defined public policy . . . will not be more readily found. That policy is subverted when an employer is required to reinstate an employee who is a chronic sexual harasser and an award which has that effect should be vacated." Newsday, 915 F.2d at 843.

[9] Title VII imposes such an obligation on AMR, and the Award will not provide AMR with any defense to liability should Levy harass again. Cf. E.E.O.C. v. Indiana Bell Tel. Co., 256 F.3d 516, 523 (7th Cir. 2002). In Indiana Bell, a Title VII case involving sexual harassment, the Seventh Circuit rejected an employer's proffered defense that the employer had not previously fired the harassing employee because the collective bargaining agreement tied its hands. The Seventh Circuit held that evidence regarding arbitration and a company's collective bargaining agreement is inadmissible in a Title VII suit to show that an employer's response to sexual harassment was reasonable for the purpose of determining the employer's liability. Indiana Bell, 256 F.3d at 519. In rejecting the employer's contention, the court of appeals analogized the case to one where an employee, while driving an employer's truck, was involved in an accident. In such a situation, the Seventh Circuit concluded that the employer could not defend on the ground that, while it knew the employee to be a poor driver, it had not fired him because it feared that an arbitrator would reinstate him. As the court stated, "[s]urely that would not be a defense. Indeed, it would not be a defense to liability even if [the employer] *had* fired the driver, and an arbitrator had reinstated him over the company's vigorous opposition. It would remain vicariously liable for its employee's misdeeds. Likewise under Title VII. . . ." Indiana Bell, 256 F.3d at 523 (emphasis in original).

workplace." Newsday, 915 F.2d at 845. As was the case in Newsday, Levy is a repeat violator of AMR's policy prohibiting harassment.[10]

Other federal courts have followed Newsday and found that awards reinstating sexual harassers violate public policy. In Consolidated Edison of New York, Inc. v. Utility Workers' Union of America, 1996 WL 374143 (S.D.N.Y. July 3, 1996), the United States District Court for the Southern District of New York held that an arbitral award reinstating a recidivist sexual harasser who had ignored earlier warnings of discharge was contrary to public policy. In 1990, the employee had received a final warning after three incidents involving improper conduct toward female co-workers. Nonetheless, in 1994, the employee engaged in further incidents of sexual harassment of female employees. At that point the employer discharged him from employment. An arbitrator, however, concluded that the discharge was too severe a sanction and awarded reinstatement without back pay on a "last chance" basis. Consolidated Edison, 1996 WL 374143 at **1 and 2.

In vacating the award, the district court found an explicit, well-defined and dominant public policy against sexual harassment in the workplace and properly couched a question as "whether the arbitrator's award reinstating [the employee] is contrary to that policy." Consolidated Edison, 1996 WL 374143 at *3. The court concluded that it was because reinstatement of a repeat sexual harasser who ignored an earlier explicit warning prevented the employer from carrying out its legal duty to eliminate sexual harassment in the workplace. Consolidated Edison, 1996 WL 374143 at *4. As in Newsday, the district court found the determinative factor to be that the "present case involved an employee who had received a clear and direct final warning arising from several prior incidents of sexual harassment." Consolidated

---

[10] Levy's prior violation of AMR's policy, however, concerned harassment based on race/national origin not sex.

Edison, 1996 WL 374143 at *5. Thus, "[r]einstatement of an employee who had already been issued a strong and unambiguous warning that any further sexual misconduct could lead to dismissal would contravene the public policy condemning such behavior." Consolidated Edison, 1996 WL 374143 at *5. [11]

Similarly, in United Transp. Union v. Burlington N. R.R. Co., 864 F. Supp. 138 (D. Ore. 1994), the United States District Court for the District of Oregon vacated an arbitrator's award that reinstated, on procedural grounds, an employee who had committed sexual harassment. That harassment occurred on the employer's property during a company-sponsored social function. In addressing whether the award there should be vacated as violative of public policy, the district court correctly recognized that it is the arbitrator's award itself that must contravene public policy. A court cannot determine merely that there is a public policy against a particular sort of behavior and conclude that reinstatement of an individual who engaged in that conduct in the past would violate the policy. Burlington N. R.R., 864 F. Supp. at 141, citing Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, 886 F.2d 1200, 1212 (9th Cir. 1989) (*en banc*), cert. denied, 495 U.S. 946 (1990). As the district court properly stated, "it must be demonstrated 'that the policy is one that specifically militates against a relief ordered by the Arbitrator.'" Burlington N. R.R., 864 F. Supp. at 141, quoting Stead, 886 F.2d at 1212-13. The district court found such a public policy because the policy prohibiting sexual harassment in the workplace places on employers the affirmative legal responsibility to maintain a workplace

---

[11] For this reason, the Arbitrator's conclusion here that the MOU had expired and did not apply to trigger immediate discharge (see Award at 11-12) is itself in violation of public policy. Any such requirement in the CBA absolving Levy of that prior harassment also would itself violate the public policy in Title VII. Cf. St. Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 47 (2d Cir. 1997) (concluding that result in Newsday vacating the second arbitral award reinstating a repeat sexual offender had the effect of upholding the first arbitral award providing for the employee's immediate discharge for any further harassing behavior). The fact the parties agreed not to consider prior incidents in certain circumstances does not mean (i) Levy's prior harassment never occurred or (ii) that it should not be considered for purposes of the public policy analysis.

environment free of sexual harassment. The arbitrator's award thus violated a well-defined and dominant public policy against sexual harassment in the workplace. Burlington N. R.R., 864 F. Supp. at 142.

Likewise, the Minnesota Court of Appeals, in a post-Eastern Assoc. Coal decision, relied on federal and state policies to hold that an arbitrator's award reinstating a police officer who had been terminated for engaging in a long-standing pattern of sexual harassment violated public policy and would not be enforced. City of Brooklyn Ctr. v. Law Enforcement Labor Serv., 635 N.W.2d 236 (Minn. Ct. App. 2001). Citing Eastern Assoc. Coal, the Court of Appeals of Minnesota properly recognized that the relevant inquiry was not whether the officer's conduct violated some public policy but rather whether an arbitral decision to reinstate him did so. Brooklyn Ctr., 635 N.W.2d at 241-42. The "dispositive question is whether the arbitrator's decision, which was a product of the interpretation and application of the labor agreement, violates public policy." Brooklyn Ctr., 635 N.W.2d at 242. The court found that it did.

The court concluded that Minnesota has a well-defined and dominant public policy that imposes upon governmental units an affirmative duty to prevent and to sanction sexual harassment and sexual misconduct by law enforcement officers. Further, the municipality as an employer was charged with the duty to prevent sexual harassment in the workplace. Both Title VII and Minnesota's Human Rights Act prohibit employers from engaging in sexual harassment.[12] Thus, an employer has an affirmative duty to take action reasonably calculated to prevent sexual harassment in the workplace. Brooklyn Ctr., 635 N.W.2d at 242-43.

In reviewing federal decisions on the subject, the Court of Appeals of Minnesota concluded that the dispositive issue in those opinions was whether there had been prior offenses

---

[12] Likewise, Massachusetts law, as embodied in M.G.L. c. 151B, prohibits both employers and employees from engaging in sexual harassment.

or warnings. In such cases "the public policy exception may be invoked. But when there have been no prior offenses or warnings the exception may not be invoked." Brooklyn Ctr., 635 N.W.2d at 243.[13] In sum, the court in Brooklyn Center, 635 N.W.2d at 244, concluded that a strong and clear public policy against sexual harassment, the affirmative duty of employers to implement that policy and the unique opportunity of a police officer with a lengthy history of violations of that policy to continue to commit similar violations required the conclusion that "the arbitrator's decision under the extreme facts of this case violated public policy and must be vacated." To allow the police officer to continue to work would be "tantamount to exempting the city from its duty to enforce its own policy and the public policy against sexual harassment." Brooklyn Ctr., 635 N.W.2d at 244.

As the Minnesota Court of Appeals correctly recognized, the dispositive issue in determining whether an award reinstating a sexual harasser violates public policy turns here on the repeat nature of an employee's harassment and an explicit warning of termination to follow. See Way Bakery v. Truck Drivers Local No. 164, 363 F.3d 590, 595 (6th Cir. 2004) (in racial harassment case, Sixth Circuit, in post-Eastern Assoc. Coal decision, distinguished Newsday and found it inapplicable because employee in Newsday had sexually harassed co-workers in the past and previously had been disciplined for that misconduct whereas employee in Way Bakery did not have a prior disciplinary record, and the award of reinstatement did not condone or fail to discourage hostile behavior in the workplace); Saint Mary Home, 116 F.3d at 47 (Second Circuit making clear that Newsday involved a repeat sexual offender reinstated once before with a warning by an arbitrator of immediate discharge for further harassing behavior; "vacating the

---

[13]     The Minnesota Court of Appeals further stated that, "[p]erhaps prior warnings and offenses or lack thereof, are among the many factors that have been persuasive in the federal courts in cases raising the public policy exception." Brooklyn Ctr., 635 N.W.2d at 244.

second arbitrator's reinstatement had the effect of upholding the first arbitral award"); Jamaica Buses, Inc. v. Transport Workers' Union AFL-CIO, Local 100, 2003 WL 1621026 *6 (E.D.N.Y. March 26, 2003) (district court, in post-Eastern Assoc. Coal case, recognizing that outcome of the application of Newsday "has depended in great part on whether the grievant had been given explicit warnings that the complained of behavior violated the sexual harassment policies of the employer – either from previous arbitral awards . . . or in previous grievance procedures provided for in collective bargaining agreements"; court finding no prior notice to employee that violation of sexual harassment policy would result in termination) (citations omitted).[14] Here Levy admitted to a previous violation of AMR's policy prohibiting harassment as evidenced by the MOU. He was on notice that any further violation of that policy would result in his immediate discharge, and public policy mandates that the Award be vacated.

    2.    **The Award also violates public policy in that it fails to impose any consequential punishment <u>for the public spanking of a female co-worker.</u>**

The grounds for finding the Award contrary to public policy are even stronger here than in Newsday because the Award failed to impose *any* meaningful punishment. Despite having found that Levy twice publicly spanked a woman, reduced her to tears and mortified her, thereby engaging in conduct that bordered on criminal assault and battery, the Arbitrator reinstated Levy with all benefits, imposed only a written warning and did not even warn that further conduct of that type would result in Levy's termination. In Newsday, 915 F.2d at 843, the arbitrator reinstated the employee without back pay and ordered that any similar offensive behavior would be grounds for immediate discharge. The Award here, by failing to mete out any meaningful

---

[14] In neither of the decisions cited above rendered after Eastern Assoc. Coal (i.e. Way Bakery and Jamaica Buses) did the court reason that Eastern Assoc. Coal abrogated the result in Newsday. Rather, in both cases the court distinguished Newsday on the facts.

discipline, showed a shocking disregard for the federal and state policies against sexual harassment in the workplace and must be vacated.  By effectively imposing no penalty for Levy's outrageous conduct, the Award condones his behavior and is entirely inconsistent with the public policy in Title VII.  In Eastern Assoc. Coal, 531 U.S. at 65-66, the Supreme Court, in holding that an award of reinstatement there did not violate public policy, made it clear that the award "does not condone" the "employee's conduct" as the "award punishes [the employee] by suspending him for three months, thereby depriving him of nearly $9,000 in lost wages . . .; it requires him to pay the arbitration costs of both sides; it insists upon further substance-abuse treatment and testing; and it makes clear . . . that one more failed test means discharge."

Likewise, in Way Bakery, 363 F.3d at 595, the Sixth Circuit upheld an arbitrator's award reducing a discharge penalty to six-months' unpaid suspension and ordering reinstatement because that award did not condone or fail to discourage racial harassment.  Rather, the award subjected the employee to a six-month loss of pay, placed him on probation for five years and warned that a repeat of racial harassment or racially abusive language would be the basis for immediate discharge.  As the Sixth Circuit pointed out, "the arbitration award in the present case does not condone [the employee's] behavior, but rather punished him by depriving him of his salary for six months and placing him on probation for five years."  Way Bakery, 363 F.3d at 596.  See also Westvaco Corp. v. United Paperworkers Int'l Union, 171 F.3d 971, 976-77 (4th Cir. 1999) (Fourth Circuit, in upholding reinstatement award, pointed out that the arbitrator imposed a "severe sanction of a nine-month suspension without pay. . ." and noted that the nine-month suspension without pay was a "strict punishment" such that the court could not find that it

would prohibit the employer from exercising reasonable care to correctly promptly the harassing behavior).[15]

## IV.   CONCLUSION

For the foregoing reasons, AMR respectfully requests that the Court enter summary judgment in its favor and against the Union on the Complaint, vacate the Award and grant AMR such other relief as the Court deems just and appropriate.

Respectfully submitted,

AMERICAN MEDICAL RESPONSE
OF MASSACHUSETTS, INC.,

By its attorneys,


/s/ Kevin P. Sweeney
Paul J. Murphy, BBO No. 363490
Kevin P. Sweeney, BBO No. 548761
Menard, Murphy & Walsh LLP
60 State Street, 34th Floor
Boston, MA 02109
(617) 832-2500


Dated:  February 21, 2006


G:\B\BELLENGHI\PLEADINGS\plaintiff's memo in support of msj.doc

---

[15]   For the above reasons, federal courts of appeals decisions such as Weber Aircraft, Inc. v. General Warehousemen and Helpers Union Local 767, 253 F.3d 821 (5th Cir. 2001), Westvaco, Chrysler Motors, and Communication Workers v. Southeastern Elec. Coop., 882 F.2d 467 (10th Cir. 1989), which reached contrary results, are distinguishable. None of those cases involved a situation where both the employee was a repeat violator of the company's policy against harassment who had received a warning that termination would occur for any further harassment and the award of reinstatement failed to impose any meaningful punishment on the harasser.