UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN MEDICAL RESPONSE<br>OF MASSACHUSETTS, INC.<br>    Plaintiff, | )<br>)<br>)<br>) |
| v. | )   CIVIL ACTION NO.: 04-11736 PBS<br>)<br>) |
| INTERNATIONAL ASSOCIATION OF<br>EMTs and PARAMEDICS, Local 1,<br>    Defendant. | )<br>)<br>) |

**OBJECTION TO PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF IT'S MOTION FOR SUMMARY JUDGMENT**

**ARGUMENT**

I.  **STATEMENTS OF UNDISPUTED FACTS MUST ACCURATELY REFLECT THE FACTS AND NOT A PARTY'S CHARACTERIZATION OF THOSE FACTS.**

The defendant incorporates by reference its argument presented in its motion for summary judgment regarding the standard for motions for summary judgment. The defendant does not dispute the factual content of the parties' collective bargaining agreement (CBA, exhibit 1) or the facts evinced in the arbitral award. (Award, *passim*) The defendant does, however, dispute the plaintiff's characterization of facts as contained in its statement of undisputed facts as sensationalized and, therefore, inaccurate. As such those mis-characterized and sensationalized statements must be discounted for accuracy and the arbitrator's award itself should be referred to when considering the parties' memorandum.

The claim that Levy subjected the alleged victim "to a stream of profanities, accused her of … 'fucking management,'" is not supported by the text of the arbitrator's award. (Award, pgs

1

4, 5.) The grievant did resort to the use of profanities, but the characterization that it was a 'stream of profanities,' is inaccurate and inflammatory. The IAEP does not dispute the utterance of those words, only the plaintiff's mis-characterization of them.

Furthermore, the use of the phrase "fucking management" and "fuck management" is also inaccurate and inflammatory. (Award, page 5.) The defendant does not dispute that Mr. Levy uttered those words, but does dispute the inference the Plaintiff attributed to them. A careful reading of the arbitrator's award will cause the astute reader to realize that while the language used by Levy was, indeed, offense and vulgar, it was used as an adjective to modify the noun 'management' and not as a verb. (*See* Award, page 5.) Another attempt to re-write and re-interpret the Award occurs at ¶28, Plaintiff's Statement of Undisputed Facts. The Plaintiff would have the Court believe, by its argumentative phrasing, "tantamount to 'criminal assault and battery,'" that the arbitrator found Levy's conduct to be criminal. There was, however, no such finding of fact. Whereas, the arbitrator actually found that the conduct was only 'minimally' offensive to Estremera and that Levy's conduct was 'only minimally sexual harassment,' and 'socially inappropriate,' (Award, pgs. 10-11.) The arbitrator's findings, evinced by his wording, and taken as a whole, which they must be, cannot be reasonably construed to support the AMR's contention that the Levy's slapping of Estremera's buttock was a criminal assault and battery. In general, as to an arbitrator's finding of facts, s*ee United Paperworkers International Union v. Misco,* 484 U.S. 29, 37-38 (1987).

The IAEP agrees with AMR that Levy engaged in conduct that was "only minimally sexual harassment" and "socially inappropriate" conduct; and, that "Levy's employment history did not include the April 2001 suspension for purposes of imposing progressive discipline," (Award, pg. 11; Plaintiff's Statement of Undisputed Facts, ¶28, ¶29.)

Another example of AMR's mis-characterization of the facts is its statement referencing Levy's conduct, AMR stated, "[s]uch physical and verbal abuse plainly violates Title VII, and the Arbitrator so ruled." Memorandum at page 6. The fact is that the award does not cite Title VII at all and it certainly does not find that Levy violated Title VII.  (*See* Award, *passim*.)

The IAEP also here incorporates by reference the Award and re-identifies, the following undisputed fact that "the grievant's employment history did not include the suspension for purposes of progressive discipline" and "[t]herefore, the MOU expired and is inapplicable to progressive discipline," (Award, pgs 11, 12.);

Another fact stated in the Award, at page 11, and not accurately characterized by AMR is that "in this case, mitigating circumstances require a lesser penalty" than termination for Levy's conduct, that, "[f]irst and foremost, the grievant's relationship with Ms. Estremera was close and personal and they both testified that patting each other playfully on each other's buttocks was normal in their platonic friendship.  Therefore, in less public circumstances, the grievant's conduct was neither unwelcome nor offensive to Ms. Estremera," (Award, page 12.)

Finally, the legal bases for vacatur of arbitration awards are "very limited, no matter how colorfully a given petitioner may package and label its motion to vacate . . . and those bases are inapplicable in the case at hand. *Advest, Inc. v. McCarthy*, 914 F.2d 6,7 (1st Cir. 1990).  Here, the Plaintiff attempts to color and supplement its legal argument by resorting to a loose and distorted re-writing of the arbitrator's award.  The IAEP objects to such inaccurate and sensationalized characterization of the facts.

## II.    A *DE NOVO* REVIEW OF AN ARBITRATOR'S AWARD IS RESTRICTED TO QUESTIONS OF LAW AND NOT THE ARBITRATOR'S AWARD

In a First Circuit case reviewing appeals of arbitral awards that court held that *de novo* review of an arbitrator's award by an appellate court is limited. In *Prudential-Bache Sec., Inc. v.*

*Tanner*, 72 F3d 234 (1st Cir. 1995), the court relied on a then recent Supreme Court that stated, "courts of appeals should apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, ----, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). Accordingly, we accept findings of fact that are not clearly erroneous and decide questions of law *de novo. Id.,* 514 U.S. at ----, 115 S.Ct. at 1926." *Prudential*, at page 238. The simple matter here is that reviewing courts may review the law, but must accept the arbitrator's interpretation of the facts. To do otherwise (a review of the facts found by the arbitrator) would essentially be re-litigating the underlying dispute. And, such is not the proper role of reviewing courts. A *de novo* review of an arbitral award may not cause re-litigation of the underlying issues. See *infra*.

### III. AN ARBITRAL AWARD ORDERING REINSTATEMENT TO EMPLOYMENT BASED UPON THE PARTIES' COLLECTIVE BARGAINING AGREEMENT IS NOT A VIOLATION OF PUBLIC POLICY.

*Prudential-Bache Sec., Inc. v. Tanner*, 72 F.3d 234 (1st Cir. 1995) (*"Prudential"*), also address the issue of when and where public policy requires the vacatur of an arbitral award. It cited *W.R. Grace and Co. v. Local Union 759,* 461 U.S. 757, 770, 103 S.Ct. 2177 (1983) ("*W.R. Grace")* and *United Paperworkers v. Misco,* 484 U.S. 29, 38, 108 S.Ct. 364 (1987) (*"Misco"),* for the court's authority to vacate arbitral awards. Said authority, held the court, does not include "a broad judicial power to set aside arbitration awards as against public policy." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373. Rather, the court's power is limited "to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " *Id.* (quoting *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183).

The *Prudential* court further cited *Misco* and noted that the public policy vacatur standards are derived from *Misco* and *W.R. Grace*. First, the "alleged public policy must be properly framed under the approach set out in *W.R. Grace*." *Id.* This demands "examination of whether the award created any **explicit** conflict with other 'laws and legal precedents' rather than an assessment of 'general considerations of supposed public interests.' " *Id.* (quoting *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183); *see W.R. Grace,* 461 U.S. at 766, 770, 103 S.Ct. at 2183, 2185-86 (finding that obedience of judicial orders and voluntary compliance with Title VII of the Civil Rights Act of 1964 are two such public policies). Second, "the violation of such a policy must be clearly shown if an award is not to be enforced." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373." *Prudential*, 72 F.3d at 241. (emphasis supplied.)

Here AMR has not alleged and cannot allege that reinstatement violates public policy as neither Title VII nor the EEOC guidelines require that persons accused of sexual harassment be permanently terminated and never reinstated to employment. See also *Chrysler Motors Corp. v. International Union, Allied Ind. Workers*, 959 F.2d 685 (7th Cir. 1991) (*"Chrysler II"*). The *Chrysler II* court engaged in a review of the public policy exception argument when it reviewed both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq. and Equal Employment Opportunity Commission (EEOC) guidelines, 29 C.F.R. §§1604.11(a), (d), (f) (1991) to determine if the reinstatement violated public policy. *Chrysler II*, 959 F.2d at 687, 688. It did not find that the grievant's alleged misconduct violated the public policy found in Title VII or the EEOC guidelines. The Court affirmed the arbitrator's award of reinstatement (subject to a 30-day suspension).

In dispensing with the 'reinstatement is violation of public policy' argument, the *Prudential* court stated "in reviewing an arbitration award challenged on public policy grounds, we "tak[e]

5

the facts as found by the arbitrator." *Board of County Comm'rs v. L. Robert Kimball and Assocs,* 860 F.2d 683, 686 (6th Cir.1988), *cert. denied,*494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990); *see Misco,* 484 U.S. at 45, 108 S.Ct. at 374 ("The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them…."). *Id.* at page 243. The *Prudential* court did not vacate the arbitrator's award and neither should this Court.

Finally, in a case decided less than four (4) months ago (November 2005), the First Circuit again weighed in on the narrow application of the public policy exception. In *Mercy Hospital, Inc., v. Massachusetts Nurses Assoc.*, 439 F.3d 338 (1st Circuit 2005) (*"Mercy"*), the exception was found lacking and the premise was stated as "[I]n the context of an arbitration award that reinstates a fired employee, the question is **not whether the charged conduct offends public policy** or whether some remedy short of unconditional reinstatement (say, a probationary period or a suspension without pay) might have been preferable. Rather, **the sole question is whether the award itself-the order for reinstatement-gives offense**." *Mercy,* 439 F.3d at page 343. After some discussion and citations to *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) and *Eastern Associated Coal Corp. v. UMW, Dist. 17,* 531 U.S. 57, 62-63, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), the court added that the appeal there "appeal tests only whether the reinstatement award, on the facts as found by the arbitrator, contravenes an explicit, well-defined, and dominant public policy. *See E. Assoc'd Coal,* 531 U.S. at 62-63, 121 S.Ct. 462." *Id.* at page 345.

As Mercy Hospital could not, AMR can not identify "a single iteration of positive law that prohibits the reinstatement" of Mr. Levy who was accused of slapping the buttocks of a close personal friend with whom there existed relationship that allowed such behavior (though in less public environment). *Id.* at page 345. Likewise here, as in *Mercy*, "[t]his failure strongly suggests

6

that the reinstatement order does not violate public policy. *See id.* at 66, 121 S.Ct. 462 (relying heavily on the fact that the reinstatement order did not violate a "specific provision of any law or regulation" in concluding that the order did not run contrary to public policy); *Boston Med. Ctr.,* 260 F.3d at 25 (similar)." *Id.* at page 345.

### IV. TO VACATE AN ARBITRAL AWARD FOR 'MANIFEST DISREGARD OF THE LAW' THE COURT MUST FIND THE AWARD WAS MADE WITHOUT A RATIONAL BASIS AND WITHOUT FACTUAL SUPPORT.

AMR's argument that the instant arbitrator's award was entered in 'manifest disregard of the law' appears to rest upon *Advest, Inc. v. McCarthy*, 914 F.2d 6,7 (1st Cir. 1990) ("*Advest"*) and a few others, cited below. The *Advest* court required a "manifest disregard for the law" as a basis for vacating an arbitrator's award. 914 F.2d at 6-7.

As the AMR memorandum states, the *Advest* decision posits the standards for vacating an arbitral award based upon the manifest disregard standard. Interestingly, it noted that courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco*, 484 U.S. at 38; *Advest*, 914 F.2d at 8. And, "[e]ven where such error is painfully clear, "courts are not authorized to reconsider the merits of arbitration awards . . . ." S.D. Warren Co. v. United Paperworkers' Int'l. Union, Local 1069,* 845 F.2d 3, 7 (1st Cir. 1988), *cert. denied,* 488 U.S. 992, 109 S.Ct. 555, (1988). *Advest*, 914 F.2d at 8. And while *Advest* rightfully acknowledged that arbitral awards are not beyond the reach of a reviewing court, it correctly observed that "**non-reviewability** remains the general rule-and exceptions are few and far between." *Id.*; s*ee Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1049 (1st Cir.1977)." *Id.* at 8. (emphasis supplied.)

The heart of AMR's argument to vacate the Levy's reinstatement is that the award is in manifest disregard of the law. It is based upon the criteria cited in *Advest*, i.e., that the award is

7

"unfounded in reason and fact," and the "reasoning so palpably faulty" no judge or panel of judges could so rule, and the award is based upon a "crucial assumption that is concededly a non-fact." *Advest*, 914 F.2d at 8, 9. Unfortunately, however, there are no such grounds upon which to vacate this award – the award was founded in reason and fact, a judge or a panel of judges hearing the same facts and reviewing the same collective bargaining agreement could conceivably, and most likely would, arrive at the same conclusions as did Levy's arbitrator and affirm the award. Moreover, there has been no showing that the arbitrator made a crucial assumption that was concededly a non-fact. The First Circuit did not find manifest disregard of the law and affirmed the *Advest* arbitrator's award. *Id.*

In *Prudential*, *supra*, the court further opined on the manifest disregard standard "[i]n order to demonstrate that the arbitrator both recognized and ignored the applicable law, *Advest,* 914 F.2d at 9, " 'there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it,' " *id.* at 10." *Prudential* at page 240. The court found no such showing in the *Prudential* case and AMR made no such showing here. The award, therefore, must be affirmed.

Further, in *Gupta v. Cisco Sys.*, Inc. 274 F.3d 1, 3 (1st Cir. 2001) ("*Gupta"),* cited by AMR in support of its argument of manifest disregard of the law, the court restated the 'exceedingly narrow and exceedingly deferential' standards advising that those are the recognized standards in the First Circuit. *Gupta,* 274 F.3d at page 3. Importantly, the court continued, "[w]e recently emphasized that "disputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. Successful court challenges are few and far between." *Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 10 (1st Cir. 2001) (quoting *Teamsters Local Union No. 42 v. Supervalu, Inc.,* 212 F.3d 59, 61 (1st

8

Cir.2000)) (interpreting collective bargaining agreement). *Id*. Indeed, "judicial review of an arbitration award is among the narrowest known to the law." *Coastal Oil v. Teamsters Local 25,* 134 F.3d 466, 469 (1st Cir.1998) (citation omitted). *Id.*

And, perhaps dispositively of the manifest disregard issue, the Court, stated,

> "[i]n this Circuit, arbitral awards are subject to review only in two relevant instances: (1) where an award is contrary to the plain language of the contract or (2) where it is clear from the record that the arbitrator recognized the applicable law, but ignored it. *Bull HN Info. Sys.,* 229 F.3d at 330-31. 'In the parlance of this and other circuits, a reviewing court may vacate an arbitral award if it was made in 'manifest disregard' of the law.' *Id.* at 331. Thus, we will affirm the arbitrator's interpretation of the Employment Agreement if it is in any way plausible, even if we think she committed serious error. *See Coastal Oil,* 134 F.3d at 469; *Dorado Beach Hotel Corp. v. Union De Trabajadores De La Industria Gastronomica De Puerto Rico Local 610,* 959 F.2d 2, 4 (1st Cir.1992). "[I]t is the arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept." *Bull HN Info. Sys.,* 229 F.3d at 330 (internal quotation marks omitted)." *Id*. at 3.

The First Circuit did not find a manifest disregard for the law and affirmed the *Gupta* arbitrator's award.

## V. A *DE NOVO* REVIEW OF AN ARBITRAL AWARD IS RESTRICTED TO REVIEW OF LEGAL ISSUES SUCH REVIEW MAY NOT RELITIGATE UNDERLYING FACTS AS FOUND BY AN ARBITRATOR.

The settled law of arbitration does not allow for a reviewing court to re-litigate the factual basis of an arbitrator's decision. *United Paperworkers International Union v. Misco*, 484 U.S. 29, 44 (1987) ("*Misco"*). Once the parties have agreed on an arbitrator, they relinquish their courtroom rights. *Teamsters Local Union No. 764 v. J.H. Merritt Co.*, 770 F.2d 40, 43 (1985)(ruling the arbitration agreement need not be express). The Supreme Court pointed out in *Misco* that party to an arbitration agreement bargain for the arbitrator to determine the facts of their case and not a court. 484 U.S. at 44. From that observation, the Court established a standard of relying on the arbitrator's facts, regardless of their accuracy. *Id.* After all, a

reviewing court, without the ability to view the evidence itself should rely on an arbitrator "who had more opportunity to observe . . . and be familiar . . ." with the facts. *Id.*

In reiterating the "closely circumscribed" standard for vacating an arbitrator's decision, the First Circuit has upheld the standard from *Misco. See Mercy Hosp. v. Mass. Nurses Ass'n*, 429 F.3d 338, 343-45 (1st Cir. 2005). In fact, the First Circuit has held the standard is more than theory, as "the narrow scope of judicial review forbids [the reviewing court] from substituting our judgment for [the arbitrator's]." *El Doradlo Tech. Servs., Inc. v. Union Gen. De Trabajadores*, 961 F.2d 317, 320 (1st Cir. 1992).

The court should not engage in the fact-finding work of the arbitrator merely because the plaintiff claims a public policy exception. *Misco,* 484 U.S. at 44. Yet in their brief, the plaintiff seeks to have this Court do just that. For instance, the plaintiff repeatedly attempts to rely upon an incident nearly five years old, which is no longer relevant to the present complaint, to vacate the arbitral award. (Plaintiff Memo, *passim*.)

Upon reviewing the evidence presented, the arbitrator found that the collective bargaining agreement contained a requirement for (1) progressive discipline, (2) a 24-month limitations period on suspensions, and, therefore, concluded (3) that previous incidents outside the 24-month period may not be considered as part of the progressive discipline. (See Award pages 11, 12 and CBA Article 15.2.1).

When he considered the evidence presented at arbitration, the arbitrator found that previous discipline events occurred outside of the 24-month limitations period (the 24-month limit on discipline was found to be fact). (See Award at pages 11, 12.) Therefore, the arbitrator, interpreting and applying the terms of the collective bargaining agreement, determined there could be no consideration of the one previous incident and it was inapplicable for purposes of

progressive discipline. (See Award at pages 11, 12.)  According to his interpretation of the discipline article and the operative facts, the arbitrator issued his award and ordered Levy reinstated. The underlying termination need not and should not be re-litigated. The court's duty is, therefore, limited to deciding "questions of law *de novo*." *Prudential-Bache Sec., Inc. v. Tanner*, 72 F3d 234, 237 (1st Cir. 1995).

Regarding plaintiff's attempts to rehash the excluded suspension, such prior disciplinary events were not considered when the arbitrator issued his award, and because this Court does not consider new evidence, the court also should not consider any prior discipline matters. *See Misco*, 484 U.S. at 44.  First, by considering any previous incidents, the Court would be substituting its own judgment for the arbitrator's judgment in violation of the *El Doradlo Tech. Servs.* standard.  Second, by considering the standard, the Court would not be taking the facts as the arbitrator found them, and therefore violating the *Misco* standard.

The Court also should come to the same conclusion as the arbitrator, as it is bound by the facts the arbitrator found, see *Mercy Hosp.*, 429 F.3d at 343. It should not engage in a review of the arbitrator's award or the facts as found by the arbitrator as AMR would urge the Court to do. To do so would be to re-litigate the issues presented to the arbitrator and such is outside the parameters of this district court.  The Court is bound by the findings of the arbitrator. *Enterprise Wheel*, 363 U.S. at 597 (6th Cir. 1984); *see Teamsters Local Union No. 122 v. A.A. Busch & Co. of Mass.*, 660 F. Supp. 899 (D. Mass. 1987) (adopting the *Enterprise Wheel* doctrine).

Finally, the plaintiff's argument is based almost entirely on re-litigating the 24-month rule.  The plaintiff did not, however, claim the arbitrator was wrong in his analysis on the 24-month limit or exceeded his authority to review the contract when making that designation.

Therefore, as the Court should not consider the excluded suspension and the Plaintiff's argument is without merit and should be dismissed.

### VI. DECISIONAL PRECEDENTS PROVIDE FOR A NARROW REVIEW OF ARBITRAL AWARDS SUCH THAT THE LEVY AWARD MUST BE AFFIRMED.

The plaintiff's argument only restates the law, but does not provide an explanation as to why the public policy exception should apply. The Union fully acknowledges that an exception for public policy exists. *See Eastern Assoc. Coal*, 531 U.S. at 61. The union also agrees with the plaintiff that the exception is exceedingly narrow, requiring that the reinstatement of Levy **must** violate positive law. *See Id.* (emphasis supplied.) The disconnect between the plaintiff and the Union occur when the law and the facts are applied to each other and to this case.

Here the Union contends the facts do not rise to the level of violating positive law and that the arbitrator's award must prevail since there has been no public policy cited that is "explicit," "well defined," and "dominate" and "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" See *Eastern Associated Coal,* 531 U.S. 57, 62, 63,121 S.Ct. 462, 467.

Admittedly, the plaintiff artfully cites numerous cases that illustrate the 'manifest disregard' and the 'public policy' exception in their brief. (Plaintiff's motion, *passim*.) While each of these cases restates the fact that a public policy exception exists, they clearly illustrate just how narrow the exception is and that it is not available here. *See Eastern Assoc. Coal*, 531 U.S. at 52; *Misco*, 484 U.S. at 45; *W.R. Grace*, 461 U.S. at 766; *Mercy Hosp.*, 439 F.3d at 345; *Wonderland Greyhound Park*, 274 F.3d at 36; *Gupta*, 274 F.3d at 3; *Prudential-Bache*, 72 F.3d at 239; *Chrysler II*, 959 F.2d at 687; *Advest*, 914 F.2d at 9; *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 866 F.2d 1200, 1228 (9th Cir. 1989). Moreover, the

authority on which the Plaintiff relies holds quite the opposite from which the Plaintiff infers: nearly all cited cited decisions affirm the decision of the arbitrator – especially those heard by the First Circuit Court of Appeals. *See Eastern Assoc. Coal*, 531 U.S. at 52; *Misco*, 484 U.S. at 45; *W.R. Grace*, 461 U.S. at 766; *Mercy Hosp.*, 439 F.3d at 345; *Wonderland Greyhound Park*, 274 F.3d at 36; *Gupta*, 274 F.3d at 3; *Prudential-Bache*, 72 F.3d at 239; *Chrysler II*, 959 F.2d at 689-90; *Advest*, 914 F.2d at 9; *Stead Motors*, 866 F.2d at 1228. The decisions to uphold the arbitrator's award is even more compelling when you realize the severity of some of incidents, such as the blatant fondling of a woman's breast in *Chrysler II*. 959 F.2d at 686. The facts of the case at bar simply don't rise to the same level. *Id.*

Furthermore, the plaintiff's non-binding authority rests on this Court finding the grievant had a "long-standing pattern of sexual harassment." (Plaintiff's brief at 14.) The plaintiff would have the Court draw a connection between Levy, with one alleged incident[1], and others who have exhibited a pattern of harassment. (*Id*.) The problem with this argument is that here the grievant has only one incident and the grievants in the other cases have engaged in serial harassment, such as in *City of Brooklyn Ctr. v. Law Enforcement Labor Serv.*, 635 N.W.2d 236 (Minn. Ct. App. 2001) (repeated pattern of harassment); *Consolidated Edison of New York v. Utility Workers' Union of America*, 1996 WL 374143 (S.D.N.Y. July 3, 1996) (where the worker was an acknowledged recidivist sexual harasser going back ); and *United Trans. Union v. Burlington N.R.R. Co.*, D. Ore. 1994) (where the employee acknowledged the sexual harassment).

The Court must take the facts as the arbitrator found them. *Misco*, 484 U.S. at 44; (See *supra.*), the find that the award was not made in manifest disregard of the law, is not a violation

---

[1] Said incident involved a close personal friend who did not initiate or submit a complaint, but was required by AMR management to make a written statement at urging of the employer.

13

of public policy, and that the arbitrator not exceed authority as granted to him by the parties by an through the arbitration clause contained in the collective bargaining agreement. Therefore, the Court should deny the plaintiff's motion and affirm the award, including, but not limited to reinstatement and any and all make whole remedies awarded and such other relief as the court deems just and appropriate.

## CONCLUSION

Based on the foregoing, the plaintiff's motion for summary judgment must be denied, the defendant Union's motion for summary judgment be allowed and the Levy arbitration award be enforced as to the terms contained therein.

> Respectfully submitted,
> International Association of
> EMTs and Paramedics
> By its Attorney
>
>
> s/ Timothy G. Bailey
> Timothy G. Bailey
> (BBO#560308)
> 159 Burgin Parkway
> Quincy, MA 02169
> (617) 376-0220

Dated: March 7, 2006